IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
EASTERN DIVISION

| | |
|---|---|
| WARREN A. STILES, M.D. AND ) | |
| TONYA MARIE STILES, ) | |
| ) | |
| Plaintiffs, ) | |
| ) | |
| v. ) | CASE NO. 3:14-cv-1071-WHA |
| ) | |
| ) | (WO) |
| BANKERS HEALTHCARE GROUP, ) | |
| INC., ) | |
| ) | |
| Defendant. ) | |

## MEMORANDUM OPINION AND ORDER

### I. INTRODUCTION

This cause is before the court on Defendant Bankers Healthcare Group, Inc.'s Motion to Dismiss (Doc. # 11) on the basis of *forum non conveniens* and alternatively for lack of personal jurisdiction pursuant to Fed. R. Civ. P. 12(b)(2).  Also before the court are Plaintiffs Warren ("Dr. Stiles") and Tonya Stiles's Response to the Motion (Doc. # 16), the Defendant's Reply thereto (Doc. # 18), and the Plaintiffs' Reply to Defendant's Reply (Doc. # 21).

The Plaintiffs filed their original Complaint on October 21, 2014.  The Complaint sets forth claims for violations of the Truth in Lending Act (TILA) (Count I), a request for a declaratory judgment (Count II), unjust enrichment (Count III), negligence (Count IV), wantonness (Count V), Fraudulent Misrepresentation (Count VI), and Slander of Title (Count VII).  The controversy between the parties arises out of a loan transaction in which the Defendant loaned approximately $584,000 to Dr. Stiles.  A document styled Financing Agreement (Sole Proprietorship), Promissory Note/Security Agreement/Personal Guaranty ("The

1

Agreement") was signed by Dr. Stiles on June 7, 2012 and by the Defendant on June 8, 2012. Although Mrs. Stiles was not a signatory to the loan documents, she joined as a Plaintiff here because of the contention that the documents purported to impose a lien on the Plaintiffs' residence, which was shown as the business address of Dr. Stiles.  In this action, the Plaintiffs contend that the loan in question was actually a consumer loan, rather than a commercial loan as it is labeled in The Agreement.

The Agreement (Doc. #1-1) contains a forum selection clause providing that disputes will be resolved in the courts of Onondaga County, New York or Broward County, Florida.  On October 30, 2014, shortly after this action was filed, but before the Defendant was served, the Defendant filed a state court suit against Dr. Stiles personally and against Warren A. Stiles d/b/a Warren A. Stiles, M.D. in Onondaga County, New York.  Both actions were filed after the Defendant notified Dr. Stiles that the loan was delinquent as of June 25, 2014, and after the Defendant sent Dr. Stiles a copy of the Complaint it would file in the New York state court if the account was not brought current.  On December 23, 2014, the Defendant filed the instant Motion to Dismiss.  The Motion is premised on the allegation that the applicable forum selection clause contained in The Agreement is valid and enforceable and therefore requires this court to dismiss the instant action so that the entire controversy can be resolved as part of the suit pending in Onondaga County, New York.

For the reasons to be discussed, the Motion to Dismiss is due to be GRANTED.  The case will be dismissed without prejudice for *forum non conveniens*.

## II. APPLICABLE STANDARDS

### A.  Motion to Dismiss for Lack of Personal Jurisdiction

In the context of a motion to dismiss for lack of personal jurisdiction in which the court exercises its discretion not to hold an evidentiary hearing, the plaintiff bears the burden of establishing a prima facie case of jurisdiction over the movant, non-resident defendant. *Morris v. SSE, Inc.*, 843 F.2d 489, 492 (11th Cir. 1988) (citations omitted). A prima facie case is established if the plaintiff presents sufficient evidence to defeat a motion for a directed verdict. *Id.* at 492. The court must construe the allegations in the complaint as true, to the extent they are uncontroverted by defendant's affidavits or deposition testimony. *Id.* (citations omitted). Moreover, where the evidence presented by the parties' affidavits and deposition testimony conflicts, the court must construe all reasonable inferences in favor of the non-movant plaintiff. *Id.*

### B. *Forum Non Conveniens*

*Forum non conveniens* is "the appropriate way to enforce" a valid forum selection clause that directs litigation to a nonfederal forum. *Atl. Marine Const. Co. v. U.S. Dist. Court for the W. Dist. of Tex.*, 134 S. Ct. 568, 580 (2013).

To establish that dismissal under *forum non conveniens* is proper, typically the moving party must establish "that '(1) an adequate alternate forum is available, (2) the public and private factors weigh in favor of dismissal, and (3) the plaintiff can reinstate his suit in the alternative forum without undue inconvenience or prejudice.'" *Tazoe v. Airbus S.A.S.*, 631 F.3d 1321, 1330 (11th Cir. 2011) (quoting *Leon v. Million Air, Inc.*, 251 F.3d 1305, 1310–11 (11th Cir. 2001)). Although the plaintiffs' choice of forum is usually "entitled to deference, and there is a presumption in favor of" that choice, *Wilson v. Island Seas Invs. Ltd.*, 590 F.3d 1264, 1269 (11th Cir. 2009), when the plaintiff files suit outside a forum listed in a binding forum selection clause, its choice "merits no weight." *Atl. Marine*, 134 S. Ct. at 581. Instead, "as the party defying the

forum-selection clause, the plaintiff bears the burden of establishing that transfer to the forum for which the parties bargained is unwarranted." *Id.*

### III. FACTS

Dr. Warren Stiles is the president of and a shareholder in East Alabama Ear Nose and Throat, P.C. ("EAENT"). He is married to Tonya Stiles, also a Plaintiff in this case.[1]  Dr. William R. Blythe and Dr. Wesley S. Whatley are also shareholders in EAENT. The practice has been providing medical and surgical services in the Auburn and Opelika, Alabama area since 1994.

Dr. Stiles first became aware of the Defendant, Bankers Healthcare Group, Inc., around the year 2008. The Defendant sent him brochures by mail, advertising loans for healthcare businesses. The Defendant is a Florida corporation and its principal places of business are in Southwest Ranches, Florida and Syracuse, New York. Dr. Stiles first entered into a loan transaction with the Defendant in 2008 because of expected tax liabilities. He and the Defendant entered into the transaction at issue in this case in 2012.

In June 2012, Dr. Stiles and a representative of the Defendant executed a Promissory Note and Personal Guaranty, included in The Agreement, in the amount of $584,284.68. The loan was to be paid back in eighty-four monthly payments. Among other provisions, The Agreement contained a section titled "Applicable Law/Jurisdiction & Venue." (Doc. # 11-1 at 3.) This section stated in part:

> Venue for any action brought hereunder, shall be the choice of the [Defendant], and shall be limited to either Onondaga County, New York or Broward County, Florida, or, if the action involves or is brought against the Collateral, in a state court in the county where such Collateral is located, where required to enforce Creditor's rights as to or against the Collateral, unless Creditor selects an alternative forum. [Dr. Stiles] agrees to submit to the personal jurisdiction of the

---

[1] Although Mrs. Stiles is a Plaintiff, in the words of the Plaintiffs, she "has no business and/or contractual relationship with [the Defendant] whatsoever." (Doc. # 17 at 3.)

> appropriate court in the State of New York, Onondaga County, or State of Florida, Broward County, for all such disputes.

(*Id.*)  Immediately below the Jurisdiction & Venue paragraph, there was a set off, bolded statement with a spot for the debtor's initials, stating "I have read and understand the applicable law, jurisdiction, venue and waivers."  (*Id.*)   Dr. Stiles's initials appear next to the statement.

In September 2014, the Defendant sent Dr. Stiles a "Notice of Delinquency & Potential Acceleration."  (Doc. # 11-1 at 8.)  According to the notice, the amount delinquent was $13,911.54, with an additional late charge of $1,391.15, for a total due of $15,302.69.  On October 15, 2014, the Defendant sent Dr. Stiles another letter, stating that the loan was delinquent as of June 25, 2014, and absent a response a lawsuit would be filed in the near future.  A copy of the possible lawsuit complaint was attached to the letter.  The lawsuit was actually filed by the Defendant on October 30, 2014, in Onondaga County, New York.  The Complaint stated claims for "(1) breach of Financing Agreement, and (2) breach of Personal Guaranty."  (Doc. # 11-1 at 13–14.)  By the time the suit was filed in New York, the Plaintiff had filed the instant suit on October 21, 2014.

## IV. DISCUSSION

### A.  Personal Jurisdiction

Personal jurisdiction is evaluated by looking both to a state's long-arm statute and to the limitations of the Due Process Clause of the Constitution.  *S. Ala. Pigs, LLC v. Farmer Feeders, Inc.*, 305 F. Supp. 2d 1252, 1257 (M.D. Ala. 2004) (citing *Williams Elec. Co. v. Honeywell, Inc.*, 854 F.2d 389, 391 (11th Cir. 1988)).  In support of its contention that dismissal pursuant to Fed. R. Civ. P. 12(b)(2) is proper because the court lacks personal jurisdiction, the Defendant argues that because it has consented via its contract with Dr. Stiles to personal jurisdiction in Florida and New York, "due process analysis is unnecessary."  (Doc. # 11 at 16.)  The Defendant cites a

5

Southern District of Alabama decision for the proposition that "the due process analysis is unnecessary where a nonresident defendant has consented to suit in a forum." *Branch Banking & Trust Co. v. W.K. Brent Broaderip*, No. CA10-289-KD-C, 2010 WL 3955794, at *4 (S.D. Ala. Sept. 21, 2010) (quoting *Alexander Proudfoot Co. World Headquarters v. Thayer*, 877 F.2d 912, 921 (11th Cir. 1989)), *adopted by Branch Banking & Trust Co. v. Broaderip*, No. CIV.A. 10-00289-KD-C, 2010 WL 3952165 (S.D. Ala. Oct. 8, 2010).

In making this argument, the Defendant has neglected a critical difference in context between *Branch Banking* and the instant case. There, the court found due process analysis unnecessary in deciding whether it had personal jurisdiction because the parties had consented to personal jurisdiction in Alabama, where that particular court was located. *Id.* at *1, *4. In contrast, here, the Defendant is arguing that because the parties have consented to personal jurisdiction in two *other* forums, due process analysis is unnecessary and this court does not have personal jurisdiction. This logic is faulty. The fact that consent to personal jurisdiction in a certain forum obviates the need for due process analysis *in that forum* does not also mean that consent to personal jurisdiction in specified courts precludes any other court from exercising personal jurisdiction over the parties where otherwise proper. Thus, notwithstanding the Defendant's arguments to the contrary, the court must undertake a due process analysis to determine whether it has personal jurisdiction over the Defendant.

In this case, the burden is on the Plaintiffs to "establish that personal jurisdiction over the [D]efendant comports with (1) [Alabama's] long-arm statute and (2) the requirements of the due-process clause of the Fourteenth Amendment to the United States Constitution." *S. Ala. Pigs*, 305 F. Supp. 2d at 1257. The due process analysis is the essential aspect of the inquiry because "Alabama's long-arm provision, Ala. R. Civ. P. 4.2(a), authorizes the assertion of personal

6

jurisdiction to the limits of the United States Constitution." *Id.*; *see also Mut. Serv. Ins. Co. v. Frit Indus., Inc.*, 358 F.3d 1312, 1319 (11th Cir. 2004) ("Alabama's long-arm statute authorizes Alabama courts to assert jurisdiction to the fullest extent constitutionally permissible.").

Because jurisdiction in this case will arise, if at all, out of the Defendant's "activities in [Alabama] that are related to the cause of action alleged in the complaint," it is specific, rather than general, jurisdiction that is at issue. *Sloss Indus. Corp. v. Eurisol*, 488 F.3d 922, 925 (11th Cir. 2007) (internal quotations and citations omitted). In this category of cases, the Eleventh Circuit applies a "three-part due process test,"[2] analyzing:

> (1) whether the plaintiff's claims "arise out of or relate to" at least one of the defendant's contacts with the forum; (2) whether the nonresident defendant "purposefully availed" himself of the privilege of conducting activities within the forum state, thus invoking the benefit of the forum state's laws; and (3) whether the exercise of personal jurisdiction comports with "traditional notions of fair play and substantial justice."

*Louis Vuitton Malletier, S.A. v. Mosseri*, 736 F.3d 1339, 1355 (11th Cir. 2013) (citations omitted). If the plaintiff makes a sufficient showing of the first two prongs of the test, the defendant "must make a 'compelling case' that the exercise of jurisdiction would violate traditional notions of fair play and substantial justice." *Diamond Crystal Brands, Inc. v. Food Movers Int'l, Inc.*, 593 F.3d 1249, 1267 (11th Cir. 2010) (citations omitted).

Here, the Plaintiffs argue that the Defendant has "many purposeful contacts with Alabama." (Doc. # 17 at 21.) The Plaintiffs list the following specific examples: "[A]dvertising through the mail in Alabama, maintaining a website reaching Alabama consumers, contacting Plaintiff via email, letter, and telephone in Alabama, and receiving payment of funds drawn from an Alabama bank." (*Id.*) The Plaintiffs have supported this argument with evidence in the form

---

[2] The three-part test cited by the Plaintiffs (Doc. # 17 at 20) uses a differently worded third prong and treats the "traditional notions of fair play and substantial justice" issue as a separate matter. The court will use the test set out above as it is taken from a more recent published decision by the Eleventh Circuit than the Plaintiffs' cited test.

of Dr. Stiles's affidavit, copies of emails and letters the Defendant sent to him in Alabama, and a printed copy of the Defendant's website. (Doc. # 16 at 3–11.) This constitutes a sufficient showing of the first two prongs of the test set out in *Louis Vuitton*. First, the claims in this case arise out of multiple of the Defendant's contacts with Alabama. The Defendant initially sent brochures to Dr. Stiles in Alabama, and throughout the business relationship contacted him through emails, letters, and telephone calls. Second, in sending these materials and otherwise contacting Dr. Stiles in Alabama, the Defendant can be said to have "purposefully availed itself" of the benefits of doing business in the state.[3] For these reasons, the first two prongs have been satisfied.

The court further finds that the Defendant has not made "a 'compelling case' that the exercise of jurisdiction would violate traditional notions of fair play and substantial justice." *Diamond Crystal Brands*, 593 F.3d at 1267. In fact, the Defendant has devoted almost no argument to the proposition, as it mainly rests on the faulty argument discussed above—that contractual consent to jurisdiction in New York and Florida excludes the possibility of valid personal jurisdiction in Alabama. The Defendant's only briefing addressing "traditional notions of fair play and substantial justice" is a conclusory statement that "it was unforeseeable that BHG would be [haled] into Court in Alabama." (Doc. # 11 at 17.) Considering the Defendant's contacts with Alabama, the court cannot agree.[4] At any rate, this conclusory argument falls far short of making a "compelling case" that the court's exercise of jurisdiction over the Defendant would "violate traditional notions of fair play and substantial justice."

---

[3] For the purposes of its jurisdictional analysis only, the court does not consider the effect of the forum selection clause.

[4] To the extent the Defendant is arguing that the forum selection clause made being haled into court in Alabama unforeseeable, the court treats the forum selection clause as a separate issue from whether it may exercise proper personal jurisdiction in this case.

For these reasons, the court finds that it may exercise valid personal jurisdiction over the Defendant in this case. Therefore, the Motion to Dismiss will not be granted on the basis of lack of personal jurisdiction pursuant to Fed. R. Civ. P. 12(b)(2). Accordingly, the court will proceed to the issue of whether the forum selection clause in this case is enforceable.

### B. Forum Selection Clause

#### 1. Whether the Forum Selection Clause is Enforceable

The Defendant argues the court should enforce the forum selection clause found in The Agreement and dismiss this case for *forum non conveniens*. The Plaintiffs argue that the contract, and therefore the forum selection clause along with it, is tainted by fraud and the forum selection clause is therefore unenforceable. They further argue that the TILA claims are subject to adjudication in this court because they seek to enforce a federal statutory right. Finally, the Plaintiffs argue that Mrs. Stiles's claims are not covered by the forum selection clause because she was not a party to it.[5]

As a rule, forum selection clauses are "presumptively valid and enforceable." *Krenkel v. Kerzner Int'l Hotels Ltd.*, 579 F.3d 1279, 1281 (11th Cir. 2009). Plaintiffs can overcome this presumption by making a "strong showing that enforcement would be unfair or unreasonable under the circumstances." *Id.* (citations and internal quotation marks omitted). Specifically, a forum selection clause is unenforceable in the following circumstances: "(1) its formation was induced by fraud or overreaching; (2) the plaintiff would be deprived of its day in court because of inconvenience or unfairness; (3) the chosen law would deprive the plaintiff of a remedy; or (4) enforcement of the clause would contravene public policy." *Id.* (citations omitted).

---

[5] The Plaintiffs do not dispute that the clause in The Agreement, if enforceable, applies to this case as "any action brought hereunder." If they did, the court would hold that it does apply, in keeping with this court's earlier case of *Smith v. Prof'l Claims, Inc.*, 19 F.Supp.2d 1276 (M.D.Ala. 1998) (Albritton, J.), with supporting cases cited therein.

The Plaintiffs' arguments that the forum selection clause is unenforceable fall mainly under the first category listed above. They argue that the contract between Dr. Stiles and the Defendant is void for unconscionability and fraud, and therefore the forum selection clause is also void. They further argue the forum selection clause is itself "unconscionable and the product of fraud/undue influence."

First, arguments concerning defects with the contract itself are misplaced in this context. As the Eleventh Circuit has explained: "In order for a forum selection clause to be invalidated on the basis of the first factor, fraud or overreaching, a plaintiff must specifically allege that the clause was included in the contract at issue because of fraud." *Rucker v. Oasis Legal Fin., LLC*, 632 F.3d 1231, 1236 (11th Cir. 2011). This rule exists so that "more general claims of fraud will be litigated *in the chosen forum*, in accordance with the contractual expectations of the parties." *Lipcon v. Underwriters at Lloyd's, London*, 148 F.3d 1285, 1296 (11th Cir. 1998) (emphasis in original). Here, the Plaintiffs' claims that the contract at issue is void for unconscionability and fraud should be litigated in the chosen forum. In determining whether the forum selection clause is enforceable, the court must consider only those claims of fraud and unconscionability that go directly to the inclusion of the clause itself in the contract.[6]

As to the forum selection clause itself, the Plaintiffs argue that the clause is void because it "is buried in the middle of a document that is nearly unreadable and hidden in a mass of verbiage." (Doc. # 17 at 13.) They further argue that "the clause appears to offer a unilateral choice by BHG to instigate suit in one of two venues, all while Dr. Stiles cannot sue BHG

---

[6] The Plaintiffs have cited language from *Tisdale v. Shell Oil Co.*, 723 F. Supp. 653, 655 (M.D. Ala. 1987) in support of the proposition that a contract's status as void due to fraud or undue influence justifies not enforcing a forum selection clause in the contract. (Doc. # 17 at 11.) To the extent that decision is inconsistent with *Rucker* and *Lipcon*, the court disregards it as it contrary to more recent controlling precedent.

anywhere, for anything." (*Id.*)  In summary, the Plaintiffs argue "the paragraph is undecipherable to a layman and cannot warrant serious consideration . . . ." (*Id.*)

These arguments do not convince the court that the forum selection clause's inclusion in the contract was the result of "fraud or overreaching."  As to the font size and presentation of the clause itself, it is in the same size type as the rest of the contract. This has been recognized as an acceptable format for a forum selection clause in other Eleventh Circuit cases.  *See Krenkel*, 579 F.3d at 1281.  Moreover, the clause is set off by a line immediately below it, written in larger bold type, stating "I have read and understand the applicable law, jurisdiction, venue and waivers." (Doc. # 11-1 at 3.)  In the blank space where instructed to initial next to this statement, Dr. Stiles appears to have placed his initials in agreement with the statement.  (*Id.*)  This area for Dr. Stiles to place his initials draws attention to the forum selection clause and does not fit with the Plaintiffs' assessment that the clause is "hidden in a mass of verbiage."  The fact that Dr. Stiles *did* initial next to the statement that he had read and understood the clause further undermines the Plaintiffs' arguments.

Furthermore, the court does not agree with the Plaintiffs' argument that the forum selection clause prevents them from suing the Defendant "anywhere, for anything."  The Plaintiffs have in fact sued the Defendant.  If the court enforces the forum selection clause and dismisses without prejudice, the Plaintiffs will not be prevented from suing the Defendant in one of the agreed to forums or from filing counterclaims against it in the pending state court action in New York.[7]  The court finds the Plaintiffs have not shown the forum selection clause to be the result of fraud or overreaching.

---

[7] The TILA allows suits to be filed in "any United States district court, or in any other court of competent jurisdiction."  15 U.S.C. §1640(e).

The Plaintiffs also argue that the Motion to Dismiss "is due to be denied based on the nature of the Stiles' claims, which include, *inter alia*, a claim for violation of TILA." (Doc. # 17 at 17.) The Eleventh Circuit has held that "[f]ederal statutory claims are as a rule arbitrable . . . and claims under TILA . . . are no exception." *Anders v. Hometown Mortg. Servs., Inc.*, 346 F.3d 1024, 1030 (11th Cir. 2003) (citations omitted). Although this case does not involve an arbitration clause, "[a]greements to arbitrate are akin to forum-selection clauses." *Id.* at 1029 (citations omitted). Based on this precedent, the court concludes that TILA claims, like other federal statutory claims, are generally subject to the reach of contractual forum selection clauses. The only case the Plaintiffs have cited to the contrary is not binding authority, and the court finds it unpersuasive. The inclusion of TILA claims in the suit does not alter the analysis as to whether the forum selection clause should be enforced.

Finally, the Plaintiffs argue that even if the forum selection clause is enforceable and TILA claims fall within its scope, the clause does not bind Mrs. Stiles because she was not a party to the contract containing the clause. As the Plaintiffs correctly note, "[i]n order to bind a non-party to a forum selection clause, the party must be 'closely related' to the dispute such that it becomes 'foreseeable' that it will be bound.'" *Lipcon*, 148 F.3d at 1299 (quoting *Hugel v. Corp. of Lloyd's*, 999 F.3d 206, 209 (7th Cir. 1993)). While the Plaintiffs argue that Mrs. Stiles's claims are not sufficiently "closely related" to Dr. Stiles's claims for her to be bound by the forum selection clause, the court disagrees. The arguments made in support of Plaintiffs' contentions are similar to those underlying the Plaintiffs' claims of fraud; namely that the transaction was not actually "commercial" in nature and that the Defendant improperly took a security interest in the Stiles's home. Whatever the substantive merit of these arguments and Mrs. Stiles's claims, they are in fact "closely related" to the contract and the dispute.

Furthermore, it does not appear that Mrs. Stiles has made any claims other than those also asserted by Dr. Stiles. Mrs. Stiles's position is similar to the non-parties in *Lipcon*, in which the court found that "the interests of the [non-parties] in this dispute are completely derivative of those of the [parties]—and thus 'directly related to, if not predicated upon' the interests of the [parties.]" 148 F.3d at 1299; *see also Smith v. Prof'l Claims, Inc.*, 19 F. Supp. 2d 1276, 1282 (M.D. Ala. 1998) ("[The non-party] has not alleged any facts or theories for relief other than those asserted by [the party]. . . . As such, she was so closely related to the dispute that she is bound by the forum selection clause."). Here, Mrs. Stiles would have no basis for her claims in the absence of Dr. Stiles's dealings and contractual relationship with the Defendant. In sum, Mrs. Stiles's claims are sufficiently related to the dispute and the contract at issue that she may properly be bound by the forum selection clause, even though she was not a party to the contract between Dr. Stiles and the Defendant.

The Plaintiffs have not raised other arguments as to why the forum selection clause is unenforceable. It does not appear that the clause is unenforceable for any of the remaining three reasons listed in *Krenkel*. Therefore, the court finds the forum selection clause to be valid and enforceable in this case.

### 2. *Forum Non Conveniens* Analysis

As discussed above, dismissal for *forum non conveniens* is generally appropriate when "(1) an adequate alternate forum is available, (2) the public and private factors weigh in favor of dismissal, and (3) the plaintiff can reinstate his suit in the alternative forum without undue inconvenience or prejudice.'" *Tazoe v. Airbus*, 631 F.3d at 1330. In the special case of a forum selection clause, however, the court should not consider the private factors. *Atl. Marine*, 134 S. Ct. at 582. Furthermore, because the public factors "will rarely defeat a transfer motion, the

practical result is that forum-selection clauses should control except in unusual cases."[8]  *Id.*  As the Eleventh Circuit has summarized, after *Atlantic Marine* it is clear that "an enforceable forum-selection clause carries near-determinative weight in this analysis."  *GDG Acquisitions, LLC v. Gov't of Belize*, 749 F.3d 1024, 1028 (11th Cir. 2014).  Indeed, an enforceable forum selection clause should be "given controlling weight in all but the most exceptional cases."  *Atl. Marine*, 134 S. Ct. at 579 (quoting *Stewart Org., Inc. v. Ricoh Corp.*, 487 U.S. 22, 33 (1988) (Kennedy, J., concurring)).

For these reasons, the court will only examine the public factors in this case in determining whether to grant the motion to dismiss pursuant to *forum non conveniens*.  The public factors include "the administrative difficulties flowing from court congestion [and] the local interest in having localized controversies decided at home."  *Atl. Marine* at 581 n.6 (internal quotation marks and citations omitted).  The court does not view any potential difficulties of litigating the instant controversy as sufficiently severe to warrant overriding the forum selection clause.  As the Supreme Court has observed, "'the interest of justice' is served by holding parties to their bargain."  *Id.* at 583.  Here, there is already a pending suit in a forum specified in the forum selection clause, and any claims of the Plaintiffs here can be asserted as counterclaims.  The parties have "contracted in advance to litigate disputes in a particular forum, [and the court] should not unnecessarily disrupt the parties' settled expectations."  *Id.*  There are no extraordinary circumstances here that warrant departing from the usual rule that a forum selection clause controls in a case such as this.  To the extent the Plaintiffs have alleged fraud and other misrepresentations in the process of forming the contract at issue, they will be able to

---

[8] Although the Supreme Court's analysis in *Atlantic Marine* discusses transfer motions under 28 U.S.C. § 1404, the same discussion also applies to motions to dismiss under *forum non conveniens* when the forum selection clause points to a nonfederal forum.  *Atl. Marine*, 134 S. Ct. at 580–81.

raise those claims in New York state court. The interest of justice is best served here by enforcing the forum selection clause.

For these reasons, the court finds this case is due to be DISMISSED without prejudice for *forum non conveniens*.

## V. CONCLUSION

For the reasons discussed above, it is ORDERED that the Motion to Dismiss (Doc. # 11) is GRANTED and this case is DISMISSED without prejudice on the basis of *forum non conveniens*.

DONE this 10th day of March, 2015.

 /s/ W. Harold Albritton
W. HAROLD ALBRITTON
SENIOR UNITED STATES DISTRICT JUDGE